Robert FULTON, Jr., Appellee,

v.

**L. W. BAXTER, Appellant.**

**No. 50779.**

Supreme Court of Oklahoma.

June 12, 1979.

---

David R. Dickey, Dickey, Markum & Dickey, Oklahoma City, for appellee.

William R. Burkett, Linn, Helms, Kirk & Burkett, Oklahoma City, for appellant.

SIMMS, Justice:

Plaintiff-Appellee commenced an action in the District Court of Oklahoma county seeking an accounting and damages. Plaintiff alleged that Defendant-Appellant had destroyed a partnership and converted certain partnership assets. The case was tried to a jury without objection from either party. Verdict was returned in plaintiff's favor and judgment was accordingly entered on the verdict. Defendant appeals.

The Court of Appeals, Division I, reversed and remanded for further accounting, relying upon *Ewing v. Owens, Okl., 441 P.2d 964 (1968).* Plaintiff-appellee seeks certiorari from this Court. Certiorari Granted, Court of Appeals opinion vacated.

The operative facts, as disclosed from the record, are that plaintiff and defendant formed a partnership in April, 1970, to sell life, health, and disability insurance. The partnership, known as Fulton-Baxter & Associates, acquired non-exclusive general agency contracts with various insurance companies. In addition to sales made by the partners, policies were sold through the partnership by a number of appointed agents. When these agents sold policies written by insurance companies with which Fulton-Baxter had an agency contract, the partnership was paid an override commission. After 1970, these agents accounted for the bulk of gross sales processed through the partnership.

On or about September 25, 1975, the defendant informed plaintiff of his desire to terminate the partnership and divide the assets. The plaintiff agreed to the dissolution and suggested that each partner place a value on the partnership assets with one partner to have the option of buying or selling at the stated value. Defendant agreed.

Pursuant to the agreement, both partners prepared separate valuations of the assets. Plaintiff placed a value of $6,000 on partnership "goodwill". Defendant listed "goodwill" as an asset having no value. Plaintiff placed a value on the group contracts and override commissions totalling $40,000. Defendant listed these contracts as assets with no value to the partnership. The parties were unable to reach a settlement of their differences.

Thereafter, defendant entered into new general agency contracts with the insurance companies serviced by the partnership. These new contracts were in the name of L. W. Baxter & Associates.

Contracts with Fulton-Baxter, the partnership, were subsequently cancelled, but not before some policies were processed under the L. W. Baxter contract. Defendant had the Yellow Page listing changed from Fulton-Baxter to L. W. Baxter & Associates. Defendant also had the telephone company change its records to show that the telephone number used by the partnership was now to be used by L. W. Baxter & Associates. Defendant instructed the post office not to release partnership mail when the plaintiff requested it. Defendant continued to occupy the partnership offices and when the lease expired, defendant renewed it in the name of L. W. Baxter. In short, all the assets evaluated by the defendant to be worthless, ultimately came to be the assets of defendant's new insurance agency.

### I.

■ We held in *Ewing, supra*, that one general partner could not bring an action against his co-partner to recover damages until a final settlement of partnership affairs was accomplished by marshalling partnership assets, ascertaining surplus, and discharging liabilities. We believe this to be an accurate statement of the rule which has been widely followed in Oklahoma and other jurisdictions. *Lavery v. Gardner*, 116 Okl. 63, 243 P. 216 (1926); *Bertozzi v. Collaso*, 21 Ariz. 388, 188 P. 873 (1920). See, also, 21 A.L.R. 21. The *Ewing* rule, however, cannot be properly applied without regard to another venerable maxim: "Equity will act when the remedy at law is inadequate."

■ It was believed that an action at law between partners might prove futile absent an accounting because the accounting might reveal that one partner was liable to the other partner in an amount either more or less than he was claiming. Therefore, equity jurisdiction could be invoked to insure protection to all parties. See: *68 C.J.S. Partnership § 110, at pp. 552–553.* Accordingly, this Court has recognized that if the respective partners in a partnership action can be adequately protected in an action at law, a co-partner may proceed at law without the necessity of an accounting. *Johnson v. Steward, Okl., 397 P.2d 907 (1964); Smith v. Felkel, 91 Okl. 184, 217 P. 196 (1923).*

The rule is succinctly stated by the Supreme Court of Kansas in *Frith v. Thomson*, 103 Kan. 395, 173 P. 915 (1918):

"If the suit involved the adjustment of complicated accounts in which an ordinary legal remedy was inadequate, an accounting might have been warranted, but there is no necessity [for] resorting to an accounting where full inquiry may be made and justice secured through the ordinary legal remedies."

In *Ewing, supra*, this Court did not reverse on the basis of issues improperly submitted to the jury. *Ewing, supra*, was reversed because there was not sufficient evidence to support the verdict. Such is not the case here.

### II.

In order to determine whether the jury correctly concluded that defendant appropriated partnership property, this Court

must resolve three questions: (1) What was the extent of defendant's duty relative to partnership property? (2) Did the defendant breach that duty? (3) Did the evidence support the amount of damages awarded?

The duty concerning profits derived from a partnership is found at 54 O.S.1971, § 221, which provides:

"(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

The quoted statute is unambiguous and imposes an absolute duty. Though the Uniform Partnership Act was adopted in Oklahoma in 1955, this section is consistent with the position assumed by this Court in decisions promulgated prior to 1955. *Thomas v. Mathis, 181 Okl. 1, 72 P.2d 484 (1937); Ponder v. Hays, 188 Okl. 243, 107 P.2d 1025 (1940).* This duty remains undiminished by the fact that a partnership has been dissolved. 54 O.S.1971, § 230, provides that on dissolution of a partnership, the partnership is not terminated, "but continues until the winding up of partnership affairs is completed."

■ This Court has consistently held that good faith is most especially required where one partner is trying to oust another partner. *Waller v. Henderson, 135 Okl. 231, 275 P. 323 (1929); Thomas v. Mathis, supra.* The statutes and cited cases compel us to the conclusion throughout the period in question, the defendant was bound to exercise good faith relative to partnership transactions and property.

■ Evidence in this case shows that defendant purposely brought about the termination of the partnership lease and renewed it in the name of L. W. Baxter. Conduct of this category is not to be permitted in the context of the partnership affiliation. In *Waller v. Henderson, supra,* we adopted the rule that a partner may not obtain a renewal of a partnership lease for his own purpose to commence after the expiration of the original lease, or after the termination of the partnership without disclosing those facts to his co-partners. The rule is succinctly stated at *60 Am.Jur.2d "Partnership", § 127, at p. 53:*

"Even after dissolution of the partnership, the equitable expectancy of renewal [of the lease] remains a partnership asset for the purposes of liquidation, to be taken into account and disposed of for the common benefit of the partners, and hence, a renewal after dissolution of the firm, taken by less than all the partners, inures to the benefit of the firm."

We therefore have no difficulty in finding that defendant breached his fiduciary duty and wrongfully appropriated the partnership lease to his own benefit, notwithstanding his insistence that the offices occupied by the partnership were of no value to the partnership.

■ We are unpersuaded by defendant's argument that the business relationships, overrides, and agency contracts could not be wrongfully appropriated since they were contingent or cancellable at will. We agree with the statement found in *Rowley on Partnerships, Bobbs-Merrill, § 21.1, at p. 544 (1960),* which reads:

"The same rule which governs the securing of leases applies to other benefits, and if a member of an insurance partnership secures a renewal of agencies in himself and for his own benefit, it is held that he takes them for the use of the firm, and this even though the other partners contemplated going out of business."

In the instant case, the defendant not only renewed the agencies in himself, he processed policies through his own agencies before the partnership contracts were cancelled.[1]

### III.

■ The record reveals sufficient evidence from which the jury could conclude

1. Partners, ordinarily, are under a duty not to compete with the partnership but a discussion of this topic is not essential for resolution of the issues raised in this case.

that defendant wrongfully appropriated valuable partnership assets and converted them to his own use. There was sufficient evidence regarding partnership income for the years preceding dissolution, and testimony regarding income generated by at least one agency contract following dissolution. There was also presented testimony concerning the proceeds realized from a project conceived in the course of the partnership and consummated following dissolution. We find the amount of the verdict supported by competent evidence.

The opinion of the Court of Appeals is therefore vacated, and the judgment of the trial court is Affirmed.

JUDGMENT OF TRIAL COURT AFFIRMED.

All the Justices concur.